### THE MOHAWK.

### THE TRANSFER NO. 20.

(Circuit Court of Appeals, Second Circuit. April 10, 1917.)

Nos. 138, 139.

1. COLLISION ⬦⬦95(2)—MEETING STEAM VESSELS—NEGLIGENT NAVIGATION.
    When a long tow was lying in East River above the Battery and about 600 feet off the Manhattan piers, tailing upstream with a strong flood tide, the steamer Ragnarok came around the Battery under tow and stopped some distance off the Brooklyn piers opposite, waiting for the vacation of her slip and leaving enough space between her and the tow for the passage of one vessel, but not for two. Behind the tow the tug Transfer No. 20, with a car float on each side, was coming down, as near

⬦⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the piers as the tow, when the steamer Mohawk rounded the Battery, and after signaling the Transfer with one whistle started to pass up between the tow and the Ragnarok. The Transfer paid no attention to the first signal and crossed the second, heading out toward the Brooklyn shore, so that when one of her car floats came into collision with the Mohawk they were on crossing courses, with the Mohawk on the starboard side of the Transfer and the privileged vessel under the rules. The blow struck the Mohawk caused her to swing around, and she came into collision with the tug of the Ragnarok. The Mohawk kept her course and speed until just before the collision. *Held*, that she was not in fault, but that the Transfer was solely in fault for both collisions, for not waiting until the Mohawk had passed and for changing her course.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 200–202.]

2. COLLISION ☞91—CROSSING VESSELS—STARBOARD HAND RULE.
The exception to the starboard hand crossing rule in case of vessels coming around bends in channels applies only in case of short bends, where for some reason approaching vessels cannot see each other within half a mile.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 187–192.]

Appeals from the District Court of the United States for the Southern District of New York.

Suit in admiralty for collision by Eliza A. Fernald and Jennie T. Gerting, owners of the steam tug Leader, against the steamer Mohawk, the New England Steamship Company, claimant, and the tug Transfer No. 20, the New York, New Haven & Hartford Railroad Company, claimant, impleaded, with cross-libel by the owner of the Transfer. Decree against both the Mohawk and the Transfer, and the latter claimant appeals. Modified.

Burlingham, Montgomery & Beecher, of New York City (Chauncey I. Clark, of New York City, of counsel), for Eliza Fernald and others.

Haight, Sandford & Smith, of New York City (Clarence Bishop Smith, of New York City, of counsel), for the Mohawk.

James T. Kilbreth, of New York City, for the Transfer No. 20.

Before COXE, WARD, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. This suit grows out of collisions at a place in the East River between the Whitehall ferries and the old Wall Street ferry in New York. The District Judge in his opinion refers to this region as one "fruitful of disaster." The collision occurred on August 20, 1914, about 6 p. m. The weather was clear. The tide was strong flood. There was no wind to interfere with navigation.

There were two collisions, one immediately following the other. The first collision was between the steamer Mohawk, owned by the New England Steamship Company, and Transfer No. 20, owned by the New York, New Haven & Hartford Railroad Company. The impact of this first collision caused the Mohawk to head toward the steam tug Leader, which it hit, and which sank within 15 minutes. The owners of the Leader then filed this libel against the Mohawk, and alleged that the collision was due solely to the fault of that steamer. Decrees have been entered accordingly, and from them the New York, New Haven & Hartford Railroad Company appeals.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The New England Steamship Company as the owner of the Mohawk then filed a petition in which it was alleged that the collision between the Mohawk and the Leader was not due in any respect to any fault or negligence on the part of the Mohawk or those in charge of her, but was wholly due to the fault and negligence of Transfer No. 20, and asking that Transfer No. 20 be brought in as a party to the suit. The New York, New Haven & Hartford Railroad Company filed a cross-libel as the owner of Transfer No. 20.

The District Judge found both Transfer No. 20 and the Mohawk in equal fault on the Leader's libel and directed that the damages in the sum of $7,212.76 and costs in the sum of $50.24 be divided; and on the libel of the New England Steamship Company and cross-libel of the New York, New Haven & Hartford Railroad Company the damages and costs were ordered divided for the like reason, the damages and costs of the New England Company being $2,212.73, and those of the Railroad Company being $304.97.

[1] The question which is presented to this court is to determine whether this collision was due to the equal fault of the Mohawk and Transfer No. 20, and, if not, to place the fault where it rightly belongs.

The steamship Mohawk, 265 feet long, left her pier in the North River about 5:45 p. m. on the day in question, rounded the Battery about halfway between South Ferry and Governor's Island and proceeding under one bell straightened on her course up the East River on her way to New Bedford. Transfer No. 20 was coming down the East River on the New York side, having in tow two car floats, one on each side, lashed alongside. The car floats were fully loaded with freight cars, there being 20 or 21 cars on each float. The car floats were 250 feet long. The Transfer was bucking the tide, and proceeding at the rate of 3 or 4 miles an hour, and was on its way to New Jersey. As the Mohawk rounded the Battery the steamship Ragnarok was ahead of her, with the tug Leader on her starboard side, forward of amidships. The Leader was a steam tug 68 feet in length, 17.4 feet beam, with 7.5 feet draft. The Leader was a tight, staunch, and seaworthy steam tug, and was well and sufficiently manned and equipped. The Ragnarok, a Norwegian cargo boat, was lying off Bedloe's Island, when the tug made fast on her starboard side just abaft her forecastle head. The Ragnarok left her anchorage, accompanied by the Leader, about 5:30 p. m., and proceeded up the East River. This steamer was bound for Pier 12, Brooklyn. After rounding the Battery, the Ragnarok headed toward Brooklyn, and, finding that her pier was occupied for the time, she lay in the stream, waiting for her berth to be vacated at 6 o'clock, having stopped her engines about 150 feet off the pier. While lying there the pilot on the Ragnarok discovered the Mohawk coming around the Battery. His attention was called to her by the blowing of her alarm whistle. The Mohawk was headed across toward Brooklyn, and toward Pier 12.

At the time of the collision there was lying in the East River off Piers 5 and 6 what is described as the Albany or Pocahontas tow. It was headed about even with the pier head line, and the stern of the tow trailed in toward the shore. There is testimony to the effect that the tow was perhaps 700 feet long. The trial judge thought that it

was lying 600 feet off the Manhattan shore, or a little more than one-fifth of the distance across the river at that point. The Pocahontas tug in charge of this tow was headed south and using her engines merely to stem the flood tide, so that she would remain stationary while other tugs brought out scows to make up the tow. The captain of the Transfer stated that he first saw the Mohawk when he got abreast of the first tier of the tow. The Mohawk was then rounding the Battery. As the Ragnarok turned towards Brooklyn, she left room for one vessel to pass between her and the Pocahontas tow. The Transfer, which had been waiting for the Ragnarok to leave room for her to pass, changed her course, and, without hearing or answering the Mohawk's whistle, entered into the gap. The result was a collision; the space not being sufficient for her to pass. The space between the Ragnarok and the Pocahontas tow was wide enough for one to pass, but not for two. The Mohawk had the right of way, and kept her course until danger of collision became apparent.

As the Mohawk straightened on her course toward the Brooklyn side of the channel, and between the Pocahontas tow and the Ragnarok, she saw, lying directly behind the tow, Transfer No. 20. At that time the Transfer was lying about off Pier 10, on a course parallel with the New York piers, the distance from the New York piers being slightly less than that of the tow. The Mohawk at this time was on her course up the river, and when she was about off the New York ferry slip of the Thirty-Ninth Street ferry to Brooklyn, her master blew one whistle to the Transfer. He then waited a reasonable time, and, on receiving no answer, stopped the engines of the Mohawk and blew alarm whistles. He then repeated the signal of one blast, which the Transfer immediately answered with two, crossing the signal given, and directing her course out into the river. The master of the Transfer maintains that he blew a signal of one blast to the Mohawk, and that the two-blast signal was blown to one of the tugs of the tow; but the master of the Mohawk testified he saw the Transfer change her heading to cross his bows, and supposed that the two blasts were blown to him.

At this time the Mohawk was drifting with the tide and her own momentum. There was not room for her to pass between the Transfer and the tow, and reversing would have increased the risk of collision. The proctors for the Transfer agree that the Mohawk should have passed the Transfer on the Brooklyn side. To do this, and to avoid the Transfer as she headed away from New York, the master of the Mohawk put his helm hard aport and his engines full speed ahead. He blew his alarm whistle again, and then a single blast of his whistle, to indicate that it was necessary for him to proceed ahead. This maneuver was almost successful; but, before the Mohawk had quite cleared the car floats, the latter struck her just abaft of the after gangway, within about 50 feet of her stern. The Mohawk's engines were immediately put full speed astern, but the impact forced the Mohawk's stern downstream and her bow up, causing her to head toward the tug Leader, which, seeing her approach, let go of the Ragnarok and started ahead, but was struck by the Mohawk before she had proceeded far.

The District Judge found, and the testimony shows, that when the Mohawk blew her first signal of one whistle the Transfer was lying in a place of safety, close to the New York piers, off Pier 10, and headed down the river. The District Judge found, and the testimony shows, that the Transfer did not answer this whistle, or pay attention to the navigation of the Mohawk, which was proceeding on her course up the river, so as to pass between the tow and the Ragnarok. The District Judge found, and the testimony shows, that from the position of safety off Pier 10, the Transfer changed her course, so as to proceed out into the river and go past the tow, and, though the Mohawk at once put her helm hard to port and her engines full speed ahead, the Transfer proceeded sufficiently far out into the river so that her car floats struck the Mohawk near the Mohawk's stern.

To summarize, we have these three undisputed facts: (1) The Transfer was in a place of safety, and headed in a direction which would have avoided collision. (2) The Mohawk in ample time blew a blast of one whistle for the two vessels to pass as they were headed, and the Transfer did not answer or pay any attention to this whistle. (3) The Transfer, on the contrary, changed her course, and shortly thereafter collision resulted.

It is claimed that the collision might have been avoided if the Mohawk had gone still further to the east, and objection is made to the finding of the District Judge that the Transfer proceeded out as far as the middle of the river, and to his further finding that the Ragnarok was sufficiently close, so that the effect of the blow was to turn the Mohawk's bow into collision with the tug Leader. The findings of fact, made by the District Judge, that the Transfer proceeded out as far as the middle of the river, were correct, as was the further finding that the vital fault of the Transfer, which makes her responsible for the collision, is that she neglected to answer signals and changed her course so that collision resulted. The Mohawk and the Transfer were on crossing courses, the Transfer having the Mohawk on her starboard bow. The fact that the Mohawk struck the starboard corner of the starboard float shows that the Transfer was under a starboard helm, and not heading down stream. This made the Mohawk the privileged vessel, and gave her the right to continue her course until danger was imminent.

The District Judge found the Mohawk at fault for going into a crowded space and proceeding on her course too long. This court, however, sees no fault in what the Mohawk did. There was ample space for her to go between the tow and the stern of the Ragnarok, if the Transfer had not starboarded and made the place dangerous. The Mohawk, going with the tide, could not safely stop; whereas the Transfer, bucking the tide, could do so.

[2] The Supreme Court in The Victory and The Plymothian, 168 U. S. 410, 18 Sup. Ct. 149, 42 L. Ed. 519 (1897), held that the starboard hand rule, that when two vessels are crossing, so as to involve risk of collision, "the vessel which has the other on her own starboard side shall keep out of the way," is not ordinarily applicable to vessels coming around bends in channels, which may at times bring one vessel

on the starboard of the other. The District Judge thought the Plymothian doctrine applicable; but in our opinion this was not a case of rounding a bend under rule 5 of the Inland Regulations of 1897. That rule contemplates a short bend or curve, where for some reason approaching vessels cannot see each other within half a mile.

The decree below should be modified, and Transfer No. 20 be held solely to blame for both collisions. It is so ordered.